## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| **CARLOS LURON HARRIS** | **CIVIL ACTION NO. 06-0373** |
| **VS.** | **SECTION P** |
| **LOUISIANA STATE UNIVERSITY MEDICAL CENTER, ET AL.** | **JUDGE JAMES** <br> **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is Carlos Luron Harris's *pro se* civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on March 1, 2006. Harris is not presently in custody; however, when the complaint was filed he was a pre-trial detainee in the custody of the Ouachita Parish Sheriff at the Ouachita Corrections Center, Monroe, Louisiana. Plaintiff complained of a series of events starting on October 4, 2005, when he was involuntarily committed to the mental health unit of the Louisiana State Medical Center (LSUMC) in Monroe.

In his original complaint he sued the LSUMC, Ouachita Parish Sheriff Richard Fewell, and Louisiana's Fourth Judicial District Court. He prayed for "an ex parte order for emergency medical treatment for mental illness, social services, placement in a safer living condition, and an attorney who will properly assist him from further abuse and neglect in his liberty, bring justice to all who has harmed/injured him, and see to it that the plaintiff recovers from damages..." [doc. 1-1, p. 3] In his amended complaint filed on April 17, 2006, plaintiff sued the nurse and physician who were on duty at the mental health unit during the night shift on October 6, 2005. He prayed for "an attorney who will fully assist me in this matter. Order Hospital to reimburse

me for all of the time I spent in jail for a crime I didn't commit and any other losses. Inspect and investigate the LSU Med. Ctr. Psychiatric Unit and its employees, i.e., upon commitment I was not given a bug bath, treated for sores, nor give a physical, etc ... expedite punitive damages in a manner that would make them be careful not to neglect another patient in any way..." [doc. 3, p. 4]

## STATEMENT OF THE CASE

On October 4, 2005, plaintiff was involuntarily admitted to the Mental Health or Behavioral Unit at the LSUMC in the E.A. Conway Hospital in Monroe "...because he was considered by professionals employed by [LSUMC] to be an emergency risk of harm or deterioration to himself and/or others, and was incapable of protecting himself from himself and/or others ... [LSUMC staff] administered medications to [him] by injection and placed him on 24 hour watch in an exam room on the first floor instead of the Behavioral Unit's Ward on the 5th Floor that was specifically designed for patients under this status." [doc. 1-1, p. 5]

On October 6, 2005, he was "...instructed ... by a nurse employed by the [LSUMC] to go unsupervised to the restroom in the lobby down the hall and take a bath in the sink ..." He "entered the restroom unsupervised, locked the door, and proceeded to take a bath as instructed until he noticed the victim ... tampering with the restroom doorknob. Petitioner was disturbed by the noise the doorknob made and opened the door. [The victim] exited the restroom crying, 'He locked the door...'" [*id*., p. 6] According to the official police report, however, plaintiff was escorted to the restroom; when the nurse who escorted him opened the door, plaintiff saw the female victim inside the restroom, pushed the nurse away from him, locked the door, held the female victim, touched her inappropriately while exposing himself, and then released her. [doc.

2

3, p. 4]

Petitioner was then arrested and charged with false imprisonment and sexual battery. He was discharged into the custody of the Ouachita Parish Sheriff's Office and he was incarcerated at the Ouachita Parish Corrections Center where he received no treatment for his mental illness. [doc. 1-1, p. 3]

On January 11, 2006, plaintiff filed a *pro se* application for writ of *habeas corpus* in the Fourth Judicial District Court. [doc. 1-1, pp. 4-8] On January 27, 2006, plaintiff was brought to court and advised of the nature of the charges filed against him. [doc. 1-1, p. 3] On or about May 8, 2006, plaintiff was released from custody and notified the court of his new address.

## LAW AND ANALYSIS

1. Appointment of Counsel

Plaintiff seeks court-appointed counsel to assist him in the prosecution of his civil rights claims. [See doc. 1-1, p. 3; doc. 3, p. 4] Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. §1983. "Generally no right to counsel exists in §1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985). Pursuant to 28 U.S.C. §1915(e)(1), federal courts are given the power to request that an attorney represent an indigent plaintiff.

In the case of *Mallard v. United States District Court for the Southern District*, 490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) the United States Supreme Court held that federal courts can only request that an attorney represent a person unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1) to make

3

compulsory appointments.

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." See *Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982) and *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th Cir. 1989). No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in determining whether the plaintiff is entitled to have the court request that counsel assist him in his suit. It is proper for the court to consider the following factors: the type and complexity of the case; the plaintiff's ability to adequately present and investigate his case; the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." See *Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14; *see also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242.

Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure private counsel on his own behalf. *See Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213. Plaintiff is not excused from trying to procure counsel for himself.

Plaintiff's claims are not atypical of those often asserted in civil rights litigation and are not complex. Further, plaintiff is not incarcerated or detained at present and he has failed to demonstrate that he has attempted to procure counsel on his behalf.

Accordingly, plaintiff's request for appointment of counsel should be denied as the allegations contained in the complaint do not demonstrate "exceptional circumstances" which

would warrant the appointment of counsel. Moreover, plaintiff's request should be denied because plaintiff has failed to demonstrate any effort to secure counsel on his own behalf.

## 2. Frivolity Review

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990). Plaintiff was a prisoner[1] when he filed his suit and was granted *in forma pauperis* status.

A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

---

[1] See 28 U.S.C. §1915(h) and §1915A(c) which provide in pertinent part, "...the term 'prisoner' means any person incarcerated or detained in any facility who is accused of ... violations of criminal law..."

5

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). A district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's original complaint is clear and concise. Plaintiff has pled his best case and need not be afforded any further opportunity to amend.

Accepting all of plaintiff's allegations as true, the undersigned concludes, for the reasons stated hereinafter, that plaintiff has failed to state a claim for which relief may be granted and accordingly, recommends dismissal of the complaint.

### 3. The Louisiana State University Medical Center

Plaintiff has named the LSUMC as a defendant in his original complaint. (He did not, however, name this entity as a defendant in his amended complaint.) LSUMC cannot be distinguished from the Board of Supervisors because the Board of Supervisors is the operative arm of the medical center. (Article 8, section 7 of the Louisiana Constitution of 1974 created the Board of Supervisors and charged it with supervising and managing the institutions administered through its system.) LSUMC was established under the administration of the Board of Supervisors and, therefore, the correct defendant is the Board of Supervisors and any reference to

6

the Board of Supervisors includes LSUMC.

The Board of Supervisors is an arm of the State of Louisiana and as such, is entitled to the protections of the Eleventh Amendment which bars a federal court from "entertain[ing] a suit brought by a citizen against his own State." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185-86 (5th Cir.1986). The State of Louisiana has not waived this sovereign immunity. See *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1360-61, 39 L.Ed.2d 662 (1974). In short, LSUMC enjoys sovereign immunity and plaintiff's claims against this entity must be dismissed on that basis. *Boston v. Tanner*, 29 F.Supp. 2d 743, (W.D.La.,1998).

### 3. Fourth Judicial District Court

Plaintiff named the Fourth Judicial District Court as a defendant in his original complaint; but did not name this entity as a defendant in his amended complaint. Fed. R. Civ. P. 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether Louisiana's Fourth Judicial District Court is an entity which has the capacity to sue or be sued. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code Ann. art. 24.

The Fourth Judicial District Court is not an entity capable of being sued. Plaintiff's suit against this non-juridical entity is frivolous.

### 4. Sheriff Fewell

Plaintiff named Ouachita Parish Sheriff Richard Fewell as a defendant in his original complaint. In this original complaint, plaintiff stated that following his arrest, he "... was placed in the custody of the Ouachita Correctional Center in care of Sheriff Richard Fewell where he remains in general population as a pretrial detainee with no care and treatment for his mental condition." [doc. 1-1, p. 3] In his amended complaint, plaintiff did not name Fewell as a defendant and alleged no fault on his part. [doc. 3]

Plaintiff was a pre-trial detainee in the custody of Sheriff Fewell when the complaint was filed. Therefore, his denial of medical care claim must be analyzed under the due process clause of the Fourteenth Amendment and the "deliberate indifference" standard which is also used to analyze medical care claims arising under the Eight Amendment's prohibition of cruel and unusual punishment. See *Hare v. City of Corinth*, 135 F.3d 320, 324-26 (5th Cir.1996) (citing to the court's *en banc* decision at 74 F.3d 633, 643 (5th Cir.1996)) (Under the Fourteenth Amendment, an official's act or omission violates a pretrial detainee's due process right to medical care if the official acts with subjective deliberate indifference to the detainee's rights.)

Plaintiff can establish an actionable constitutional violation only if he alleges facts tending to establish that the defendants were <u>deliberately indifferent</u> to his serious medical needs. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). Plaintiff has not made such a showing. Here, the facts alleged clearly fail to establish the defendants' deliberate indifference to plaintiff's medical needs.

"[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). Moreover, "deliberate indifference cannot be inferred

8

merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). The fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997). Prison officials are not subject to liability under §1983 for acts or omissions of their subordinates on the basis of *respondeat superior*. *Mouille v. City of Live Oak*, 977 F .2d 924, 929 (5th Cir.1992). Prison officials may be found liable in their individual capacities for denying humane conditions of confinement to the inmates in their charge, but only if it is shown that they were aware of facts from which the inference could be drawn that a substantial risk of harm existed, and, that the official actually drew the inference. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ; *Downey v. Denton County*, 119 F.3d 381, 385 (5th Cir.1997).

The defendants may be held liable for episodic acts or omissions only if it can be shown that they had actual subjective knowledge of a substantial risk of harm to their detainee, but responded with deliberate indifference to that risk. *Hare*, 74 F.3d at 650; *Payne v. Collins*, 986 F.Supp. 1036, 1952 (E.D.Tex.1997).

Plaintiff makes no such showing with regard to Sheriff Fewell.

Further, to the extent that plaintiff seeks injunctive relief directing Fewell to provide him with mental health treatment, such claim fares no better. The transfer of a prisoner out of an allegedly offending institution generally render his claims for injunctive relief moot. *Weinstein v.*

*Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (*per curiam*) (plaintiff's individual suit challenging parole procedures mooted by release absent "demonstrated probability" that he would again be subject to parole board's jurisdiction); *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1081 (5th Cir.1991) (*per curiam*) (holding that prisoner transferred out of offending institution could not state a claim for injunctive relief).

In order for plaintiff's claims to remain viable, he would have to establish that the possibility of returning to Sheriff Fewell's custody would make his claims capable of repetition yet evading review. See *Hardwick v. Brinson*, 523 F.2d 798, 800 (5th Cir.1975).

Plaintiff must show either a "demonstrated probability" or a "reasonable expectation" that he would again be incarcerated at CPPCC. *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982). At its most lenient, the standard is not "mathematically precise" and requires that plaintiff show a "reasonable likelihood" of repetition. *Honig v. Doe*, 484 U.S. 305, 318-19, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). Even under the most permissive interpretation, plaintiff's complaint does not suggest that the constitutional violations complained of at CPPCC are capable of repetition.

Plaintiff claims he needs mental health treatment. He has been released from custody and is now free to seek such treatment as he deems appropriate. His request for injunctive relief is moot.

### 5. Nurse and Physician

Finally, in his amended complaint, plaintiff joined the unnamed nurse and physician on duty at the LSUMC on October 6, 2005 as defendants. He claims that the "... nurse who was supervising me sent me alone to a restroom at the end of the hall around the corner." He claims

10

that after the unnamed female victim accused plaintiff of accosting her, the physician "...called the police and had me arrested for false imprisonment and sexual battery, then discharged me from the unit, told the police to escort me out through the side back door to avoid public awareness then cleared all documents and records that would lead anyone to believe I was a patient on the Psychiatric Unit." [doc. 3, p. 3]

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law[2]." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).[3]

The deprivation must be intentional, as negligent conduct cannot serve as the basis for a § 1983 claim. See *Jackson v. Procunier*, 789 F.2d 307, 310 (5th Cir.1986) (citing *Davidson v. Cannon*, 474 U.S. 344 (1986); *Daniels v. Williams*, 474 U.S. 327 (1986)).

"[Section] 1983 is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 n. 3 (5th Cir.1999). Plaintiff's complaint does not allege the deprivation of any rights secured by the Constitution. His allegation concerning the unnamed nurse suggests, at best, negligent conduct.

---

[2] Whether or not the nurse or doctor were "state actors" has not clearly been established; however for the purposes of this Report and Recommendation, it will be assumed that both parties acted under color of state law.

[3] Section 1983 provides in pertinent part, "Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...." 42 U.S.C. § 1983.

With respect to the liability of the physician, plaintiff suggests that the physician had plaintiff arrested. However, the facts alleged suggest that plaintiff was arrested because of the complaint of the unnamed victim. Plaintiff has not alleged facts to establish that this unnamed physician was the cause-in-fact of his arrest. Further, plaintiff faults the physician for discharging him from the mental health unit. However, it is equally clear that plaintiff was placed under arrest by the investigating officers. Plaintiff cannot be heard to suggest that he would have been allowed to remain at the mental health unit in light of the serious charges leveled against him by the victim of his alleged crime.

Thus, with regard to the nurse and physician, plaintiff has failed to state a claim for which relief may be granted.

### 6. Conclusion

Plaintiff's claims involve either defendants who are immune from suit, or, the claims themselves are frivolous.

Accordingly,

**IT IS ORDERED** that plaintiff's request for appointment of counsel [doc. 1-1, p. 3; doc. 3, p. 4] be **DENIED;** and,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted, and for seeking monetary relief against defendant who are immune from suit in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i), (ii), and (iii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and

12

recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 22nd day of May, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE